RICHARD I. WILKES, *Administrator*

*Of The Estate Of Beulah Mae Wilkes*

*v.*

JAMES A. SUMMERFIELD, JR., *Executor*

*Of The Estate Of James A. Summerfield*

(No. 13492)

Decided March 11, 1975.

*Thomas E. Medeiros* for appellant.

*Huddleston, Bolen, Beatty, Porter & Copen, R. Kemp Morton* and *Thomas H. Gilpin* for appellee.

SPROUSE, JUSTICE:

This is an appeal from a judgment of the Circuit Court of Cabell County. The plaintiff brought this action as administrator of the estate of Beulah Mae Wilkes against James A. Summerfield, Jr., executor of the estate of James A. Summerfield, as the defendant, demanding judgment in the amount of $18,736.15. This sum represented the balance of a joint and survivorship savings account maintained in the names of Beulah Mae Wilkes and James A. Summerfield. The account balance

included a $5,070.26 deposit made by Summerfield after the death of Miss Wilkes with a check drawn upon her personal checking account. When the action was instituted, both joint tenants were deceased.

The defendant filed an answer and counterclaim, demanding a judgment of $2,421.29 for money expended by Summerfield in behalf of Miss Wilkes. The plaintiff admitted that these expenses were paid by Summerfield. Both parties moved for summary judgment. The trial court granted summary judgment in favor of the defendant, but ruled that the plaintiff was entitled to $5,076.26 subject to the defendant's "set-off" of $2,411.29. The plaintiff was awarded a judgment of $2,648.97, and from that judgment, the plaintiff appeals.

The facts of the case are either stipulated or undisputed. James Summerfield and Miss Wilkes had been intimate friends for a number of years, and he acted as her agent in handling her personal affairs. On May 7, 1970, they opened a joint and survivorship savings account in the First Huntington National Bank with funds transferred from another account maintained by Miss Wilkes.

Miss Wilkes executed in blank a number of checks upon her personal checking account over a period of several months prior to her death. On the day preceding her death, one of these checks, in the amount of $5,070.26, was filled in by Summerfield. He deposited the check to the joint savings account on the day after her death.

Summerfield was named executor of the estate by the will of Beulah Mae Wilkes, and upon qualifying, he retained an attorney for the estate. When the appraisement of the estate was filed, the savings account was listed as an asset of the Wilkes estate and not as jointly held property.

Summerfield died in October of that year. The defendant qualified as executor of his estate, and the plaintiff was appointed administrator c.t.a. of the estate of Beulah Mae Wilkes. The defendant thereafter withdrew the

proceeds of the account and established a new savings account in his name as executor. The final settlement report for the estate of Beulah Mae Wilkes reflected that the defendant had reported that the balance of the account had, by error or inadvertance, been listed as estate property instead of jointly held property.

The circuit court was entirely correct in its rulings on the summary judgment motions. Code, 1931, 31A-4-33, as amended, provides:

> "When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the person so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them; * * *."

Code, 31A-4-33 and the substantively similar predecessor provision, Code, 31-8-23, were interpreted in *Dorsey v. Short,* ___ W. Va. ___, 205 S.E.2d 687 and *Lett v. Twentieth Street Bank,* 138 W. Va. 759, 77 S.E.2d 813. The legal issue of ownership of the joint account at the time of Miss Wilkes' death is controlled by the principles as announced in those two decisions. This Court in the second syllabus point 2 of *Dorsey* said:

> "Code, 1931, 31A-4-33, as amended, creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant."

Applying that principle to the facts in this case, it is clear that the funds on deposit in the joint and survivor-

ship account became the sole property of Summerfield upon the death of Miss Wilkes. The deposit of the check in the amount of $5,070.26, however, was not made until after Miss Wilkes' death and could not, therefore, be the type of deposit contemplated by Code, 1931, 31A-44-33, as amended. Since the expenses incurred in behalf of Miss Wilkes by Summerfield were not disputed by the plaintiff, the circuit court properly allowed the amount as a "set-off" against the plaintiff's judgment.

For reasons stated in this opinion, the judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*